IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMANDA MASTEL,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | **8:25CV546**<br><br>**MEMORANDUM AND ORDER** |

This is an action under 42 U.S.C. § 1383(c)(3) for judicial review as provided in § 405(g) of the final decision of defendant Frank Bisignano, Commissioner of Social Security ("Commissioner"), denying plaintiff Amanda Mastel's ("Mastel") application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq.* Now before the Court are Mastel's Motion for an Order Reversing the Commissioner's Decision (Filing No. 9) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 13). Because there is substantial evidence to support the decision denying benefits, the Court affirms the Commissioner's decision.

## I. BACKGROUND[1]

Mastel was born in 1987 and has a high school education. She has previously worked as a home attendant and a telemarketer. On October 8, 2020, she filed for SSI benefits alleging disability due to physical and mental impairments beginning on September 23, 2020. She alleges disability due to myotonic muscular dystrophy ("myotonic dystrophy"), bipolar disorder, diabetes, esophagitis, "pseudo vulvar disorder," depression, and Crohn's disease. Her primary complaints relate to her myotonic dystrophy.

[1]The Commissioner has accepted (Filing No. 14) Mastel's description of the material facts (Filing No. 10).

She describes symptoms including joint stiffness, muscle cramps, poor balance, weakness in her arms and legs, chronic abdominal pain, tremors, fecal incontinence, migraine headaches, fatigue, difficulty walking, and difficulty using her hands.

Her SSI claim was initially denied on May 26, 2021, and upon reconsideration on November 19, 2021 (Filing No. 7-2). After Mastel filed a written request for a hearing, an ALJ held an online video hearing on July 19, 2022 (the "first hearing"). Shortly after that hearing, on August 9, 2022, the ALJ denied Mastel's claim, finding that she was not disabled under the Act. The Appeals Council denied review, making the August 9, 2022, hearing decision the final decision of the Commissioner at that time.

Mastel then filed a civil action challenging the denial of benefits and asking this Court to reverse and remand. *See Mastel v. O'Malley*, No. 8:23CV271, 2024 WL 477651, at *1 (D. Neb. Jan. 11, 2024). Then-commissioner Martin O'Malley filed an unopposed motion to reverse and remand pursuant to Sentence Four of 42 U.S.C. § 405(g). *See id.* The Court remanded Mastel's claim on October 20, 2023. Following another online video hearing (the "second hearing"), the ALJ again issued a decision finding that Mastel was not disabled as defined by the Act (Filing No. 7-10). Mastel filed exceptions, which the Appeals Council denied.

Mastel now seeks review of that decision. *See* 42 U.S.C. § 405(g); *Smith v. Berryhill*, 587 U.S. 471, 478, 480-81 (2019). As she sees it, the ALJ failed to fully develop the record on several points and rendered a decision that is not supported by substantial evidence. In particular, she faults the ALJ for failing to (1) "include any hand-related limitations" in the residual functional capacity ("RFC") determination; (2) explain why the opinions of Mastel's treating neurologist were not persuasive; and (3) fully and fairly develop the record concerning "some medical evidence" support for Mastel's RFC.

## II. DISCUSSION

### A. Standard of Review

The Court must affirm the ALJ's denial of benefits if the "ALJ made no legal error" and the decision "is supported by substantial evidence on the record as a whole." *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)). That holds true even if this Court would have reached a different conclusion than the Commissioner, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009), and "substantial evidence could have been marshaled in support of a different outcome," *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (quoting *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). Substantial evidence "is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Bonham*, 177 F.4th at 940 (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)).

### B. Eligibility for Benefits

Mastel must be disabled under the Act to qualify for SSI benefits. *See* 42 U.S.C. § 1382(a)(1). The Act defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). Mastel is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

### C. The Five-Step Process

To determine whether someone qualifies for SSI benefits, the agency runs through a familiar five-step checklist. *See* 20 C.F.R. § 416.920(a)(4). "Steps one through three require the claimant to prove (1) she is not currently engaging in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). If she has a

severe impairment but does not clear step three, "the analysis proceeds to steps four and five." *Id.* At step four, the ALJ asks "whether the claimant retains the RFC to perform her past relevant work." *Id.* If so, she is not disabled. *See* 416.920(a)(4)(iv). "If the ALJ determines the claimant cannot resume her prior occupation, the burden shifts to the Commissioner at step five to show the claimant is capable of performing other work." *Pate-Fires*, 564 F.3d at 942.

In this case, the ALJ determined Mastel had not engaged in substantial gainful activity since October 8, 2020, and that her depression and myotonic dystrophy qualified as severe impairments. However, at step three, the ALJ found Mastel "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (Filing No. 7-10). Moving on to step four, he concluded she has the RFC to perform "sedentary work" as defined in 20 C.F.R. § 416.967(a) with additional considerations, but is unable to perform any past relevant work. At step five, he determined "there are jobs that exist in significant numbers in the national economy that [Mastel] can perform." *See* 42 U.S.C. § 1382c(a)(3)(B).

### D. Issues on Review

#### 1. The ALJ's Evaluation of Mastel's Hand-Related Limitations and Falls

Mastel first argues that the ALJ did not fully and fairly develop the record regarding her hand-related limitations and falls because the ALJ's RFC determination did not include any hand-related limitations. *See Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (noting that the ALJ has a duty to develop the record fully and fairly). "There is no bright line test for determining when the [Commissioner] has . . . failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

Mastel asserts her myotonic dystrophy causes "difficulties with her hands" and impacts her "ability to perform hobbies like cooking and photography." Her treating

neurologist, Ezequiel Piccione, M.D. ("Dr. Piccione"), opined that Mastel's use of her hands is significantly limited (Filing No. 10). In Mastel's view, that opinion, coupled with her physical-therapy records and her own reports, demonstrate that the ALJ failed to fully and fairly develop the record.

Having carefully reviewed the "record as a whole," the Court concludes that the ALJ's evaluation of Mastel's hand-related limitations and falls is not only thorough but also "supported by substantial evidence." *Bonham*, 177 F.4th at 940. The ALJ considered Mastel's problems with her hands, including her grip strength, range of motion, and reports of manipulative limitations and concluded the record did not support any manipulative limitations (Filing No. 7-10). The record supports that conclusion. For instance, Dr. Piccione likewise noted that Mastel had "no grip Myotonia."

The ALJ also considered Mastel's falls, noting evidence that Mastel injured her thumb after a fall in April 2023, but that following repair in July 2023, she had a "normal grip, range of motion, and no ongoing triggering or difficulty opposing her thumb to fingers" (Filing No. 7-10).

The fact that the ALJ did not specifically include the "limitations claimed by [Mastel] and opined by Dr. Piccione" in the RFC (Filing No. 10) is not grounds for reversal. *See Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (noting that a treating physician's opinion "does not automatically control or obviate the need to evaluate the record as whole"). The ALJ was not required to adopt every functional limitation identified by a medical source. *See* 20 C.F.R. § 416.920c(a), (c)(2) (explaining that medical opinions are not given any deference or special weight and that "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion" will be); *see also Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner"); *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995) (noting that

"the ALJ may reject the conclusions of any medical expert . . . if inconsistent with the medical record as a whole").

### 2. The ALJ's Alleged Failure to Explain why Dr. Piccione's Opinions were not Persuasive

Mastel next argues that the ALJ failed to "properly address" the supportability and consistency of the opinions of Mastel's treating neurologist, Dr. Piccione. Mastel notes that supportability and consistency are the "most important factors" the ALJ considers in evaluating medical opinions and "must be discussed by the ALJ in the hearing decision" (Filing No. 10). *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (unpublished per curiam) (remanding a case to the Commissioner to further evaluate whether a medical opinion was consistent with other record evidence). She asserts that Dr. Piccione's notes "supported his opinions with findings of reduced motor strength" in various muscles, and that the ALJ's analysis of those notes "includes erroneous assumptions" (Filing No. 10).

The Commissioner sees things differently. In his view, the ALJ thoroughly considered Dr. Piccione's opinions and properly found them unpersuasive because they were unsupported and inconsistent with the evidence (Filing No. 14). The Court agrees.

The ALJ gave several thoughtful reasons for why Dr. Piccione's opinions were unpersuasive (Filing No. 7-10). He clearly read and considered whether Dr. Piccione's opinions were supported and consistent with other record evidence. He noted that many of Dr. Piccione's opinions regarding Mastel's limitations seemed to be based on Mastel's subjective self-reports because they contradicted Dr. Piccione's own clinical notes. The ALJ is not required to conduct a point-by-point analysis of every opinion in the record and comb for evidence that is consistent or inconsistent with that opinion. To the extent Mastel thinks he could have said more, even "brevity is not reversible error." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021).

### 3. The ALJ's Alleged Failure to Consider "Some Medical Evidence" in Determining Mastel's RFC

Lastly, Mastel alleges the ALJ failed to base his RFC determination on "some medical evidence" and improperly drew his own inferences from the medical record to assess the RFC (Filing No. 10). *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("To properly determine a claimant's [RFC], an ALJ is therefore 'required to consider at least some supporting evidence from a [medical] professional.'" (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Mastel asserts there was no "physical consultative examination or medical expert testimony concerning [her] myotonic dystrophy, type II, limitations." She again takes issue with the ALJ's rejection of Dr. Piccione's opinions and claims the ALJ "sought to draw inferences from the medical records without additional medical opinion support." She asserts "this was error." *See Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017) (noting that "an ALJ must not substitute his opinions for those of the physician"). According to Mastel, because the ALJ "reject[ed] the available medical opinions of Dr. Piccione," he "should have called a medical expert or ordered a consultative examination to identify" Mastel's limitations with her arms and hands.

Mastel's contention on this point is without merit. It is not required "that every aspect of an RFC finding 'be supported by a specific medical opinion,' only that it 'be supported by some medical evidence of the claimant's ability to function in the workplace.'" *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). With regard to Mastel's physical limitations, the ALJ discussed a variety of evidence to assess Mastel's limitations. He considered Mastel's testimony about her symptoms, her medical records, and her reports of daily living. Viewing the "record as a whole," *Bonham*, 177 F.4th at 940, and "in the light most favorable to [the ALJ's] determination," *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018), the Court concludes that the ALJ's RFC determination is supported by "some medical evidence of [Mastel's] ability to function in the workplace," *Twyford*, 929 F.3d at 518.

The ALJ's determination that Mastel is not disabled under the Act is supported by substantial evidence in the record. *See Bonham*, 177 F.4th at 940. Accordingly,

IT IS ORDERED:

1. Plaintiff Amanda Mastel's Motion for an Order Reversing the Commissioner's Decision (Filing No. 9) is denied.
2. Defendant Frank Bisignano's Motion to Affirm Commissioner's Decision (Filing No. 13) is granted, and his decision to deny benefits is affirmed.
3. Mastel's Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment will issue.

Dated this 2nd day of October 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge